Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Lara A. Petersen, SBN 318475
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 438
Los Angeles, California 90067
Phone:       310.276.6664
Facsimile:   310.305.1550
omid@omnilg.com
ariana@omnilg.com
lara@omnilg.com

Attorneys for Plaintiff,
OCUGIENE, INC.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCUGIENE, INC., a California corporation,<br><br>            Plaintiff,<br><br>   vs.<br><br>THERMAMEDX, LLC, a Georgia limited liability company; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No.: 2:22-cv-5607<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>**1) WILLFUL PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(A);**<br>**2) INDUCED PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(B);**<br>**3) CONTRIBUTORY PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(C).**<br><br>**JURY TRIAL DEMAND** |

PLAINTIFF OCUGIENE, INC. ("Ocugiene" or "Plaintiff") hereby files this Complaint against DEFENDANTS THERMAMEDX, LLC and DOES 1-10 (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff is the sole owner of an innovative device and method for the convenient and effective treatment of eyelid diseases, which is protected by United States Patent Nos. 7,211,070, 7,513,893, and 8,267,907 (the "Patents"). *See* **EXHIBITS A-C**.

2. In or around February 2021, Plaintiff's chief executive officer and Defendants engaged in discussions regarding Defendants' expressed interest in purchasing Plaintiff. At the time, Plaintiff's owner elected not to sell the company. Nonetheless, shortly thereafter, Defendants began to willfully and blatantly infringe the Patents by offering for sale, and presumably selling, on at least its website, https://thermamedx.com/, "EverTears" self-heating reusable compresses and lid wipes ("Infringing Products") having every limitation of at least one claim of the Patents. *See* **EXHIBIT D**.

3. Though Plaintiff has unsuccessfully attempted to address Defendants' infringement by reaching out to Defendants directly, Defendants have ignored such attempts and persist in their wrongful conduct. Thus, Plaintiff now seeks relief from this Court to resolve this dispute and be compensated for the injury caused by Defendants' unlawful business practices.

## PARTIES

4. Plaintiff Ocugiene, Inc. is now, and at all times relevant herein was, a California corporation, having a principal place of business in Los Angeles County, California.

5. Plaintiff is informed and believes, and on that basis alleges, that Defendant ThermaMEDx, LLC is, and at all times relevant herein was, a Georgia limited liability company, having a principal place of business at 3343 Peachtree Rd

1  NE, Ste. 145-509, Atlanta, Georgia 30326.

2  6. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive (individual a "Doe Defendant" and collectively, "Doe Defendants"), are unknown to Plaintiff at this time, and Plaintiff, therefore, sues Doe Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint when the same shall have been ascertained. Plaintiff is informed and believes, and based thereon alleges that each Doe Defendant was responsible intentionally, or in some other actionable manner for the events and happenings referred to herein, which proximately caused injury and damage to Plaintiff, as hereafter alleged. Any reference to Defendants shall refer to each named Defendant and all Doe Defendants, and to each of them. Any reference to a particular Defendant shall refer to the named Defendant only.

7. Plaintiff is informed and believes, and on that basis alleges, that Defendants are responsible for their acts and for their conduct, which are the true legal causes of the damages herein alleged.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 (federal question), 1338(a) (patent infringement), and 1332 (diversity of citizenship).

9. Personal jurisdiction as to Defendants is conferred on this Court because Defendants have personally availed itself of the benefits and privileges of transacting business within the State of California. In particular, on multiple occasions, Defendants have sold products to customers within the State of California on its website, https://thermamedx.com/, and through various online retail platforms, including Amazon, https://www.amazon.com/, and The Eye Doctor Shop, https://theeyedoctorshop.com/.

10. This Court also has personal jurisdiction over Defendants because Defendants have caused injury to Plaintiff within the State of California and within

this judicial district. Defendants have committed and continue to commit unlawful acts expressly aimed at Plaintiff in California, knowing that the brunt of the harm resulting from this conduct will be suffered by Plaintiff in California.

11. Venue is proper in the Central District of California under 28 U.S.C. § 1400(b). Defendants have a regular and established place of business in this district and have committed acts of infringement of the Patents in this district by offering for sale Infringing Products.

## FACTUAL BACKGROUND

12. On March 12, 2004, a utility patent application for "Device and method for exothermic treatment of eyelid diseases" was filed with the United States Patent and Trademark Office (USPTO), claiming priority to a provisional patent application filed on December 1, 2003. On May 1, 2007, U.S. Patent No. 7,211,070 (the "'070 Patent") was duly and lawfully issued by the USPTO. A true and correct copy of the '070 Patent is attached hereto at **EXHIBIT A**.

13. On January 3, 2006, a utility patent application for "Device and method for exothermic treatment of eyelid diseases" was filed with the USPTO as a continuation-in-part application claiming priority to the application that issued as the '070 Patent. On April 7, 2009, U.S. Patent No. 7,513,893 (the "'893 Patent") was duly and lawfully issued by the USPTO. A true and correct copy of the '893 Patent is attached hereto as **EXHIBIT B**.

14. On April 26, 2007, a utility patent application for "Device and method for exothermic treatment of eyelid diseases" was filed with the USPTO as a continuation of the application that issued as the '070 Patent. On September 18, 2012, U.S. Patent No. 8,267,907 (the "'907 Patent") was duly and lawfully issued by the USPTO. A true and correct copy of the '907 Patent is attached hereto as **EXHIBIT C**.

15. Plaintiff is the true owner of all rights, title, and interest in the Patents that encompass the device and method for exothermic treatment of eyelid diseases.

Indeed, the inventor of the Patents assigned all rights, title, and interest in the Patents to Plaintiff. Plaintiff, therefore, possesses the right to sue for and obtain equitable relief and damages for infringement of the Patent.

16. Plaintiff exclusively markets, manufactures, and distributes the device and method disclosed in the Patents in an attempt to improve efficacy, convenience and therefore, compliance with an eyelid disease treatment. *See* **EXHIBIT E** for true and correct screenshots from Plaintiff's website featuring the "Eye-press" product. Plaintiff's Patents generally disclose at least a sealed container with an impermeable outer membrane, and which is sized to fit generally within the peri-orbital region and shape to mold to the shape of the eye and means within the container for causing an exothermic reaction.

17. Years after the invention(s) disclosed in the Patents were invented, likely prompted by the success and novelty of the Patents, Defendants expressed an interest in purchasing Plaintiff. At the time, Plaintiff's owner did not desire to sell Plaintiff. As such, Defendants ultimately did not purchase Plaintiff nor did Defendants obtain any right, title, or interest in Plaintiff's intellectual property, including the Patents.

18. Despite the foregoing, Defendants subsequently began offering for sale, and presumably selling, the Infringing Products "EverTears." *See* **EXHIBIT D**. Similarly, if not identically, to the Patents, Defendants offer for sale, and presumably sell, a sealed container with an impermeable outer membrane and which is sized to fit generally within the peri-orbital region and shape to mold to the shape of the eye and means within the container for causing an exothermic reaction.

19. Defendants' Infringing Products satisfy each and every limitation of at least Claim 24 of the '070 Patent, Claim 7 of the '893 Patent, and Claim 1 of the '907 Patent, as set forth in greater detail below.

20. Claim 24 of the '070 Patent is reproduced below:

An article of manufacture for treating eye conditions, comprising:

   an airtight bag sized to fit generally within a single peri orbital region and sufficiently flexible to mold to the eye within the peri orbital region without extending to the rest of the face; and

 a heat source in the bag to produce an exothermic chemical reaction using two ingredients in the bag, the exothermic reaction to provide the bag with a temperature suitable for treating eye conditions and for a period of time suitable for treating eye conditions.

21. The Infringing Products comprise an article of manufacture for treating eye conditions which has an airtight bag and a heat source. The airtight bag of the Infringing Products molds to the peri orbital region of the eye as shown in images on Defendants' website. *See* **EXHIBIT D**. The fact that Defendants boast that the Infringing Products are "designed so patients can safely heat and clean the ***precise area of the eyelids***…" further demonstrates the presence of this element. *Id.*

22. The Infringing Products further comprise the heat source which is produced through an exothermic chemical reaction and provides a temperature suitable for treating eye conditions. In particular, Defendants claim that the Infringing Products "warm eye compress provides instant relief from the symptoms of severe dry eye, MGD and styes…," all of which are "eye conditions." *Id.* Moreover, the Infringing Products "provide immediate heat at the precise temperature needed to help unblock eyelid glands, and clean the area…," thereby evidencing this element. *Id.*

23. Claim 7 of the '893 Patent is reproduced below:

A compress for treating eye conditions, comprising:

a sealed container having an impermeable outer membrane and being sized to fit generally within the peri-orbital region, the container being sufficiently flexible to mold to the shape of the eye, the outer membrane being impermeable to first and second chemicals within the sealed container that are selected to have an exothermic reaction when mixed,

the container having an inner membrane that is to separate the first and second chemicals but rupture when force is applied to the container thereby allowing the first and second chemicals to mix,

the outer membrane to remain impermeable to the first and second chemicals while said force is applied and after the first and second chemicals have mixed.

24. The Infringing Products comprise a compress for treating eye conditions comprising a sealed container sized to fit generally within the peri-orbital region and having an inner membrane and impermeable outer membrane. The Infringing Products comprise a compress sized for the peri-orbital area of the eye, as illustrated in images on Defendants' website. *See* **EXHIBIT D**.

25. The Infringing Products further comprise first and second chemicals which have an exothermic reaction when mixed and which can be mixed through the application of force. Defendants instruct users to "bend [the compress] in the middle several times to click start heat," which is simply a means of applying force for more than one chemical to mix and cause an exothermic reaction. *Id.*

26. Claim 1 of the '907 Patent is reproduced below:

An article of manufacture for treating the eye, comprising:

an impermeable bag created by an impermeable membrane, the bag being sized to fit generally within a single peri-orbital region and sufficiently flexible to mold to the eye within the peri-orbital region without extending to the rest of the face;

a material attached to the outside of the impermeable bag that is suitable for absorbing and retaining a liquid substance, and a substance suitable for cleaning eyelids present in said material, wherein the material does not cover the bag completely;

a handle that is attached to the outside of the bag where the impermeable membrane is not covered; and

7

COMPLAINT

a heat source that includes a liquid in the bag to produce an exothermic chemical reaction in the bag, the exothermic reaction to provide the bag with a temperature suitable for contact with eyelids, wherein the bag is impermeable in that the liquid of the heat source cannot pass outside the bag under ordinary use of the bag when heat is being released for treating the eye.

27.  As explained with reference to Claim 24 of the '070 Patent and Claim 7 of the '893 Patent, the Infringing Products are sized to mold within the peri-orbital region of the eye. *See* **EXHIBIT D**.

28.  The Infringing Products also comprise the claimed material attached to the outside of the impermeable bag. As Defendants explain on their website, the Infringing Products are "pre-moistened" and thus, the material used thereon is "suitable for absorbing and retaining a liquid substance" and "cleaning eyelids." *Id.* The Infringing Products also clearly comprise a handle attached to the outside of the bag because there is a "means for grasping and pushing firmly on outer membrane" and "manipulation of [the] system [], especially around the peri-orbital region," as detailed in the specification of the '907 Patent. *See* **EXHIBIT C**.

29.  Finally, as previously explained, the Infringing Products comprise a heat source that results from liquids that produce an exothermic chemical reaction and that does not pass outside the bag. *See* **EXHIBIT D**.

30.  The operation of Defendants' Infringing Products can further be understood with reference to a video posted on Defendants' website and on YouTube.com at the following link: https://www.youtube.com/watch?v=BzIPPKISaXs. *See* **EXHIBIT F** for a true and correct screenshot of this webpage and video.

31.  Plaintiff is informed and believes, and on that basis alleges, that Defendants were aware of Plaintiff's rights before they began their infringing activities. Defendants' knowledge is evidenced by their advertisement of a "***patented***

self-heating pre-moistened compress/pad," though it is Plaintiff and not Defendants who hold patent rights to the Infringing Products. Defendants' use and infringement is therefore willful.

32. On or around March 30, 2022, Plaintiff, through counsel, sent a letter that informed Defendants of their infringement of the Patents and demanded that Defendants cease and desist further infringement. *See* **EXHIBIT G** for a true and correct copy of that letter, which was transmitted via United States Postal Service Priority Mail.

33. Because Plaintiff's March 30, 2022 letter was successfully transmitted in that it did not produce any indication of a lack of transmittal, Plaintiff is informed and believes, and on that basis alleges, that Defendants received Plaintiff's March 22, 2022 communication.

34. Plaintiff is informed and believes, and on that basis alleges, that at least on or before March 30, 2022, Defendants had actual notice of Plaintiff's intellectual property rights. Defendants' use and infringement is therefore willful.

35. As of the current date, no response to Plaintiff's March 30, 2022 letter has been received.

36. Defendants' Infringing Products were, and have continued to be, marketed, manufactured, distributed, and/or offered for sale in a manner that infringes Plaintiff's Patents.

37. Defendants have unjustly benefited from copying Plaintiff's technology for which Plaintiff took risks and made substantial investment to develop.

38. Defendants' infringement of the Patents and other improper conduct has and continues to cause substantial damage and irreparable harm to Plaintiff.

## FIRST CLAIM FOR RELIEF

### Willful Patent Infringement – 35 U.S.C. § 271(a)

39. Plaintiff hereby restates and realleges the allegations set forth in

1  paragraphs 1 through 38 above and incorporates them by reference.

2      40.    On May 1, 2007, the USPTO duly and legally issued the '070 Patent, entitled "Device and method for exothermic treatment of eyelid diseases." The claims of the '070 Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

    41.    Plaintiff is the owner of the entire right, title and interest in the '070 Patent and possesses the right to sue for and obtain equitable relief and damages for infringement of the '070 Patent.

    42.    On January 3, 2006, the USPTO duly and legally issued the '893 Patent, entitled "Device and method for exothermic treatment of eyelid diseases." The claims of the '893 Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

    43.    Plaintiff is the owner of the entire right, title and interest in the '893 Patent and possesses the right to sue for and obtain equitable relief and damages for infringement of the '893 Patent.

    44.    On April 26, 2007, the USPTO duly and legally issued the '907 Patent, entitled "Device and method for exothermic treatment of eyelid diseases." The claims of the '907 Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

    45.    Plaintiff is the owner of the entire right, title and interest in the '907 Patent and possesses the right to sue for and obtain equitable relief and damages for infringement of the '907 Patent.

    46.    Defendants have directly infringed and continue to directly infringe the Patents by making, using, selling, and offering for sale in the United States, and/or importing into the United States the Infringing Products, referred to by Defendants as "EverTears," which embodies the invention defined by one or more claims of one or more of the Patents, without authority or license from Plaintiff. More particularly, upon information and belief, Defendants have infringed and continue to infringe at

least Claim 24 of the '070 Patent, Claim 7 of the '893 Patent, and Claim 1 of the '907 Patent, because the Infringing Products includes every limitation of at least these claims, as explained in greater detail above.

47. Plaintiff has complied with the marking and notice requirements of 35 U.S.C. § 287.

48. Plaintiff is informed and believes, and on that basis alleges, that Defendants had actual knowledge of Plaintiff's rights in the invention claimed in the Patents. Defendants' actions constitute reckless disregard for Plaintiff's patent rights or otherwise willful and intentional infringement of the Patents.

49. As a direct and proximate result of Defendants' acts of infringement, Defendants have derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiff.

50. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendants' infringing acts and treble damages together with interest and cost as fixed by this Court.

51. Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to recover Defendants' total profits from Defendants' infringement.

52. Pursuant to 35 U.S.C. § 289, Plaintiff is entitled to recover Defendants' total profits from Defendants' infringement.

53. Plaintiff has suffered injury, including irreparable injury, as a result of Defendants' infringement. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants from infringing the Patents.

54. By reason of Defendants' infringement, Plaintiff is suffering and will continue to suffer substantial damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### Induced Patent Infringement – 35 U.S.C. § 271(b)

55. Plaintiff hereby restates and realleges the allegations set forth in

paragraphs 1 through 54 above and incorporates them by reference.

56. Plaintiff is informed and believes, and on that basis alleges, that Defendants have actively induced infringement, and continue to actively induce infringement, by others of the Patents under 35 U.S.C. §271(b).

57. Defendants' customers directly infringe (literally or under the doctrine of equivalents) at least one of the claims of one or more of the Patents when they make, use, offer to sell, or sell the Infringing Products. The customers infringe these claims as shown above with reference to paragraphs 18-30 above.

58. Defendants had actual knowledge of the Patents and its infringement thereof since at least the time it received Plaintiff's March 30, 2022 letter, attached as **EXHIBIT G** and described in paragraph 32 above. Defendants have knowingly and actively induced customers to directly infringe the Patents with the specific intent to encourage such infringement and Defendants knew (or should have known or were willfully blind) that the induced acts constitute patent infringement. Defendants' inducement includes, for example, providing technical and/or installation guides, hardware specifications, demonstrations, and other actions that induce its customers to directly infringe the Patents.

## THIRD CLAIM FOR RELIEF

### Contributory Patent Infringement – 35 U.S.C. § 271(c)

59. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 58 above and incorporates them by reference.

60. Plaintiff is informed and believes, and on that basis alleges, that Defendants have contributorily infringed and continue to infringe the Patents under 35 U.S.C. § 271(c).

61. Defendants have offered to sell, sold, or sell within the United States or import into the United States the Infringing Products. Each Infringing Product is a material part of the invention of at least one of the claims of at least one of the Patents. The Infringing Products are not staple articles nor commodities of

commerce suitable for substantial use that does not infringe at least one of the claims of at least one of the Patents.

62. Defendants' customers directly infringe (literally or under the doctrine of equivalents) at least one of the claims of at least one of the Patents when they make, use, offer for sale, or sell an Infringing Products. The limitations of at least one claim of at least one of the Patents are met by the Infringing Products, as described in paragraphs 18-30 above.

63. Defendants had actual knowledge of the Patents and its infringement thereof since at least the time it received Plaintiff's March 30, 2022 letter, attached as **EXHIBIT G** and described in paragraph 32 above. Defendants have offered to sell, sold, or imported into the United States the Infringing Products knowing (or should have known or were willfully blind) that such products were especially made or especially adapted for use in an infringement of the Patents and not a staple article or a commodity of commerce suitable for substantial non-infringing use.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A. Entry of a judgment that Defendants have infringed one or more claims of U.S. Patent No. 7,211,070;

B. Entry of a judgment that Defendants willfully and deliberately infringed U.S. Patent No. 7,211,070;

C. Entry of a judgment that Defendants have infringed one or more claims of U.S. Patent No. 7,513,893;

D. Entry of a judgment that Defendants willfully and deliberately infringed U.S. Patent No. 7,513,893;

E. Entry of a judgment that Defendants have infringed one or more claims of U.S. Patent No. 8,267,907;

F. Entry of a judgment that Defendants willfully and deliberately

infringed U.S. Patent No. 8,267,907;

  G. An order preliminarily and permanently restraining and enjoining Defendants, its officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from engaging in the manufacture, use, offer for sale or sale within the United States, or importation into the United States, of the Infringing Products until after the expiration date of the Patents;

  H. An order requiring Defendants to deliver and be impounded during the pendency of this action all material in Defendants' possession, custody, or control that includes or incorporates products that infringe Plaintiff's patent rights, including but not limited to, any products, containers, packages, labels, and advertisements in their possession or under their control utilizing Plaintiff's Patents, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof;

  I. An order of an independent accounting of all of Defendants' financial records relating to their infringing activities in order to determine the sums of money owed to Plaintiff;

  J. An order requiring Defendants to pay to Plaintiff all damages or other monetary relief, including but not limited to all gains, profits, and advantages derived by Defendants as a result of Defendants' infringement of the Patents;

  K. An order requiring Defendants to pay to Plaintiff treble damages and/or exemplary damages because of Defendants' willful conduct pursuant to 35 U.S.C. § 284;

  L. Costs and reasonable attorneys' fees relating to this action pursuant to 35 U.S.C. § 285;

  M. Pre-judgment and post-judgment interest and costs in bringing this action against Defendants; and

  N. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

requests a jury trial of all issues that may be tried to a jury in this action.

RESPECTFULLY SUBMITTED this 9th day of August, 2022.

**OMNI LEGAL GROUP**

_____
Omid E. Khalifeh
Ariana Santoro
Lara A. Petersen
Attorneys for Plaintiff,
Ocugiene, Inc.